STEVEN G. KALAR
Federal Public Defender
Northern District of California
DAVID RIZK
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:         David_Rizk@fd.org

Counsel for Defendant REYES

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FREDDY JAVIER REYES,<br><br>Defendant. | **Case No.:** CR 19–00528 CRB<br><br>**DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE**<br><br>**Court:**           Courtroom 6, 19th  Floor<br>**Hearing Date:** March 11, 2019<br>**Hearing Time:** 2:00 p.m. |

### I.     INTRODUCTION

Freddy Javier Reyes will be before the Court on March 11, 2020 to be sentenced for a $15 hand-to-hand drug sale on September 23, 2019.  When searched upon his arrest, he had *under 2 grams* of heroin on his person.  Presentence Report (PSR) ¶ 7.  His Guidelines are relatively high, at 15-21 months, primarily because he has a history of fleeing MS-13 violence targeting his family Honduras, which has led to three illegal entry misdemeanor convictions resulting in 6 criminal history points.  He has no prior history of arrests or law enforcement contacts in San Francisco; at the time of his arrest he had been living in Oakland for just a month.  *Id.* ¶ 37.  As of sentencing, Mr. Reyes will have served over four months at Santa Rita.  Since his arrest, he has not spoken to his

family, his wife, or his children and he is very worried about one of his daughters, who is ill.  The time he has already served has adequately deterred Mr. Reyes from reoffending.  He regrets returning to the United States repeatedly and understands that he must not attempt to do so again.  He respectfully asks that he be sentenced to time served and three years of supervised release.

## II.     SENTENCING GUIDELINES

Mr. Reyes stipulates to the Guidelines calculation set forth in the parties' plea agreement, which is as follows:

| | |
|---|---|
| Base Offense Level, U.S.S.G. § 2D1.1(c)(14): | 12 |
| Acceptance of responsibility, U.S.S.G. § 3E1.1: | -2 |
| **Total Offense Level** | **10** |

Mr. Reyes has falls into Criminal History Category IV.  The Guidelines sentence for a Total Offense Level of 10 and Criminal History Category I is 15-21 months.

## III.     FACTUAL BACKGROUND

Mr. Reyes was born in Tegucigalpa, Honduras in 1990.  PSR ¶ 34.  He never met his biological father, who is now deceased, but he remains close to his mother, Maria De Los Angeles Reyes, and spoke with her nearly daily prior to his arrest.  Mr. Reyes also remained in touch with his siblings (three sisters and four brothers) roughly weekly before his arrest.

Mr. Reyes was raised in a poor, rural environment in Honduras.  His stepfather was a farmer, and Mr. Reyes was allowed to attend school through the third grade.  *Id.* ¶ 42.  Thereafter he worked as a laborer.  Mr. Reyes first came to the United States after he and his family were targeted by MS-13.  When Mr. Reyes was still a teenager, MS-13 attempted to recruit his uncle to join the gang.  Mr. Reyes' uncle worked as a car mechanic and the gang wanted the benefit of his services.  When Mr. Reyes' uncle resisted their overtures, they kidnapped and killed him.  Mr. Reyes himself was subsequently stabbed by a group of MS-13 members, and he fled to the United States thereafter.  *Id.* ¶ 39.

Mr. Reyes did not come to the United States to commit crimes.  Rather, he simply hoped to survive and send money back to his family in Honduras.  Although he has attempted to enter repeatedly, he has never stayed long before being deported (in 2015, he spent a year in the states, *id.*

¶ 37). While in the country, Mr. Reyes sought work as a laborer. Prior to his arrest in this case, he was looking for part time work on street corners as a laborer, painter, or landscaper for $12/hour. Lack of employment and poverty caused him to turn to small time drug sales. In the month prior to his arrest, Mr. Reyes sent approximately $50 to his wife in Honduras, Mary Naomi Aguilar, to spend on medicine for his daughter. Mr. Reyes had three young children with Ms. Aguilar, but one passed away from an unknown illness and another of his daughters suffers from the same malady. *Id.* ¶ 36. As noted, he has not heard from his family since his arrest, and he misses his family and fears for his daughter.

### IV.   LEGAL STANDARD

The Court is familiar with the directives of *United States v. Booker,* 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a). The Sentencing Guidelines range is not mandatory and the Court has a duty to exercise judgment and discretion in arriving at an appropriate sentence. Importantly, the Court may not presume the Guidelines range is reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009) (per curiam). Instead, the Court must consider the Guidelines range, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(1), (a)(4) and (a)(6). In crafting a sentence that is "sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a), the Court must also consider the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

### V.   ARGUMENT

Several matters warrant the Court's consideration in connection with Mr. Reyes' request for a time served sentence:

*First*, the charged offense and Mr. Reyes' circumstances counsel in favor of a time served sentence of three months. This case should never have been prosecuted federally. The offense was a

$15 street-level drug sale that did not involve violence, resistance, weapons, possession of large quantities of controlled substances, or other aggravating factors.  Mr. Reyes has one prior conviction for a similarly minor drug sale over ten years ago and a handful of deportations and illegal entry convictions.  He is hardly a serious repeat offender or a threat to our community.  Rather, he is a lonely refugee of violence who, although driven from his family, is still dutifully attempting to support his wife and their sick daughter.  Federal prosecutions such as this one inappropriately single out impoverished immigrants in our community where the gravity of the crime simply does not warrant the use of federal resources, let alone a multi-month sentence.  Given the circumstances of the offense, additional custodial time is certainly not necessary to mete out sufficient punishment, consistent with the mandate of § 3553(a).

*Second*, the Sentencing Guidelines in this case, although correctly calculated under the plea agreement, nevertheless significantly overstate Mr. Reyes' criminal history and the seriousness of the offense.  With respect to offense level, Mr. Reyes is charged in this case with selling two tenths of a gram to an undercover, and possessing less than 2 grams of heroin.  Offense Level 12 covers "less than 10 grams of heroin."  Obviously, given the weigh here, Mr. Reyes falls at the very bottom of the scale for Level 12, the lowest offense level available for defendants convicted of heroin sales.  As to his criminal history, Mr. Reyes received six points for three prior misdemeanor violations of 8 U.S.C. § 1325.  He received relatively long sentences in those matters (between four and six months), given that they were misdemeanor offenses and the product of desperation and economic need and not a threat to public safety.

*Third,* deterrence does not justify a longer sentence.  As an initial matter, the available data does not support the conclusion that longer sentences promote general deterrence.[1]  Given the particular the circumstances of this case, the concept of specific deterrence does not make much sense either.  More fundamentally, Mr. Reyes, like many immigrants, faces far worse conditions in Honduras—including targeted violence by MS-13, as is the case here.  The dangers and hardships at

---

[1] *See, e.g.,* Kelli D. Tomlinson, *An Examination of Deterrence Theory: Where Do We Stand?* FEDERAL PROBATION 80 (3), 33-38 (Dec. 2016) ("Severity of punishment was once thought to deliver the main deterrent effect; the more severe the consequence for law-breaking, the less likely an individual is to commit a crime. However, this assumption has not been supported in the literature.").

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE
*REYES*, CR 19–00528 CRB

home drove him to take the extraordinary steps of leaving his family, and embarking on the dangerous journey to the United States, and ultimately to commit the instant crime.  Mr. Reyes took these steps in order to survive.  The deterrent value of a marginally longer sentence, weighed against the desperation felt by immigrants such as Mr. Reyes, is doubtful at best.  Having spent just a month in Oakland looking for day-labor work prior to his arrest, followed by Particularly given the tenuous circumstances of his family, the ordeal of his current incarceration (and likely deportation thereafter) is more than sufficient to deter him from returning.

*Fourth*, and finally, Mr. Reyes' personal history counsels in favor of a downward variance.  Although this Court frequently sees defendants from disadvantaged backgrounds, Mr. Reyes has certainly had to contend with great challenges stemming from his family's poverty.  It is also notable that Mr. Reyes has maintained strong family ties and endeavored to send money back to his wife and children in Honduras to support them.  Thus, while the instant offense is reprehensible, it is also understandable why a young man would make such mistakes out of desperation.  Mr. Reyes's personal circumstances do not favor imposition of a longer sentence.

### VI. CONCLUSION

For all the reasons set forth above, Mr. Reyes respectfully asks that the Court sentence him to time served followed by three years supervised release.

Dated:    March 4, 2019

Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

          /S
DAVID RIZK
Assistant Federal Public Defender